IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL CRAIN, DONALD FORD, and JOANNA WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>AOG, LLC d/b/a TRUFOOD MANUFACTURING,<br><br>Defendant. | CIVIL ACTION NO. 2:23-cv-759 |

## COMPLAINT

Plaintiffs Daniel Crain, Donald Ford, and Joanna Washington file this action against AOG, LLC for violations of the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621, *et seq*.), the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et seq*.), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et seq*.), and the Pennsylvania Human Relations Act ("PHRA" – 43 Pa. Cons. Stat. § 951 *et seq*.).

## THE PARTIES

1. Plaintiff Daniel Crain is an adult individual who currently resides in Oakmont, Pennsylvania.

2. Plaintiff Donald Ford is an adult individual who currently resides in Pittsburgh, Pennsylvania.

3. Plaintiff Joanna Washington is an adult individual who currently resides in Pittsburgh, Pennsylvania.

4. Defendant, AOG, LLC d/b/a TruFood Manufacturing ("TruFood"), is a Pennsylvania corporation with its principal place of business at 610 Alpha Drive, Pittsburgh, Pennsylvania 15238.

5. At all times relevant, TruFood employed more than 15 employees and was a covered employer as defined by the ADA, ADEA, FMLA, and the PHRA.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise under the laws of the United States and Plaintiff seeks redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

**A. Origin of TruFood and Its Transformation from a Local Company to a Favored Target of Private Equity Firms Around the World**

8. In 1985, TruFood began its operations in Pittsburgh, Pennsylvania, under the name Penhurst Candy Company.

9. The Penhurst Candy Company was owned and operated by the Tsudis family.

10. The Penhurst Candy Company grew steadily while retaining the family-owned nature of its business and connections to the Pittsburgh area.

11. Eventually, the Penhurst Candy Company began doing business under the TruFood name and became known as a contract manufacturer of branded and private-label snack bars, chocolate molded products, and baked goods for packaged goods companies and retailers.

12. In April 2019, TruFood was acquired[1] by AUA Private Equity Partners, LLC ("AUA Private Equity").

13. AUA Private Equity is an investment firm based in West Palm Beach, Florida. AUA Private Equity describes itself as an operationally-focused, lower middle-market investment firm providing strategic capital to companies in the consumer products and services sectors with a particular focus on family-owned businesses.

14. AUA Private Equity typically makes equity investments of $20 to $75 million in companies that generate in excess of $5 million in EBITDA.

15. Like most private equity firms, AUA Private Equity purchased TruFood for the purpose of taking control of the company's operations, restructuring the business, and then selling it at a profit. And that's exactly what happened here.

16. In October 2022, AUA Private Equity announced that it had sold TruFood to Mubadala Capital, the global asset management firm and a wholly owned subsidiary of Mubadala Investment Company. Mubadala Investment Company is an Emirati state-owned holding company that acts as a sovereign wealth fund.

17. Before the sale of TruFood was even contemplated, AUA Private Equity took steps to slash operating costs to make TruFood more attractive to potential buyers.

18. The steps that AUA Private Equity took are why Plaintiffs are seeking relief here for violations of the ADA, ADEA, and the PHRA.

---

[1] TruFood's assets were acquired by AUA Private Equity but functionally, AUA Private Equity had direct input on nearly every aspect of TruFood's day-to-day operations

B.   **The Financial Motivations Driving TruFood's Discriminatory Actions**

19. From 2019-2022, AUA Private Equity's goal was to improve TruFood's financials and make it an attractive acquisition target for some company, hedge fund, or asset management firm.

20. In early 2022, after AUA Private Equity had invested considerable amounts of money into TruFood, which included the acquisition of Simply Natural Foods (a Commack, New York based company with 200 employees), AUA Private Equity directed TruFood to take steps to cut operating costs.

21. Among the steps that TruFood took to slash costs was to replace members of its workforce that it believed were too disabled and/or too old ("Protected Class Employees") to continue working for the company.

22. TruFood carried out AUA Private Equity's directive to slash costs by identifying these Protected Class Employees, targeting these Protected Class Employees for firing, and then replacing the Protected Class Employees with younger and non-disabled individuals.

23. For Plaintiffs, their stories unfolded in strikingly similar ways: in late 2021/early 2022, Plaintiffs, who were all over 40 years old, notified Defendant that they were dealing with disabilities; Plaintiffs then sought accommodations for their disabilities; and Plaintiffs all lost their jobs in March 2022 for pretextual reasons.

24. Washington was fired for having a "poor attitude" despite having no prior writeups.

25. TruFood told Crain and Ford that the company was downsizing due to a lack of work and that they were losing their jobs.

26. However, on April 1, 2022, the Pittsburgh Tribune Review spoke with a TruFood executive and area recruiters, and it was reported that "TruFood has been hiring new employees and plans to hire about 50 more through the summer."

27. Accordingly, it is believed that the pretextual reasons for the termination of Plaintiffs' employment was to allow TruFood to replace Plaintiffs and other Protected Class Employees with younger (i.e., under 40 years of age) and/or non-disabled individuals.

28. Upon information and belief, TruFood engaged in this pattern and practice of discriminatory conduct throughout the 2020-2022 period in which the company would purge older (i.e., 40 years and older) and/or disabled employees and replace them with younger and/or non-disabled individuals.

**C.** **Plaintiff Daniel Crain**

29. Crain began his employment with Defendant in August 2016.

30. For over 5 years, Crain performed all the essential duties of his job, and he performed them well.

31. In February 2022, Crain notified Defendant that his severe arthritis and persistent issues with his knees necessitated a few days off for medical treatment.

32. When Crain returned to work, he met with Defendant's Human Resources representative and told her that he would be undergoing knee replacement surgery soon. During this conversation, Crain requested FMLA leave.

33. On March 17, 2022, Defendant notified Crain that his whole line was being eliminated and that he was losing his job because there was not enough work for him. Defendant indicated to Crain that his firing was part of a company-wide downsizing.

34.     Shortly after his firing, Crain discovered that he was the only employee on his line who lost his job.

35.     Defendant's termination of Crain's employment took place prior to Crain's leave to undergo knee replacement surgery.

36.     It is believed that TruFood acted willfully and in reckless disregard of Crain's rights under the ADA and the PHRA when it fired him because they failed to engage in the interactive process and/or believed that due to his disabilities, he was or would be unable to perform the essential functions of his job.

37.     It is believed that TruFood acted willfully and in reckless disregard of Crain's rights under the FMLA when it prevented him from taking FMLA leave and/or discriminated against him for seeking FMLA leave for his knee replacement surgery.

38.     It is believed that TruFood acted willfully and in reckless disregard of Crain's rights under the ADEA and the PHRA when it fired him because it believed that he was too old to perform the essential functions of his job.

**D.      Plaintiff Donald Ford**

39.     Ford began his employment with Defendant in April 2021 through a staffing agency.

40.     For nearly 7 months, Ford performed all the essential duties of his job, and he performed them well.

41.     In early September 2021, Ford was hired on a full-time basis by TruFood. Thereafter, Ford continued to excel at work and promoted him in November 2021.

42.     Throughout his employment, Ford had been managing disabilities in his knees. After his promotion, Ford began walking with a noticeable limp. When Ford's supervisor asked

him about the limp, Ford notified Defendant that he had a disability but that it would not prevent him from doing his job. In response, Defendant told Ford that he should consider a demotion to a packer position because they didn't want him to get hurt.

43. Soon after, in March 2022, Defendant notified Ford that it was terminating his employment because the company was downsizing its staff.

44. Shortly after his firing, Ford discovered that Defendant was not undergoing a company-wide downsizing as he was previously told in his exit meeting.

45. It is believed that TruFood acted willfully and in reckless disregard of Ford's rights under the ADA and the PHRA when it fired him because they failed to engage in the interactive process and/or believed that due to his disabilities, he was or would be unable to perform the essential functions of his job.

46. It is believed that TruFood acted willfully and in reckless disregard of Ford's rights under the ADEA and the PHRA when it fired him because it believed that he was too old to perform the essential functions of his job.

E.  **Plaintiff Joanna Washington**

47. Washington began her employment with Defendant in November 2020 through a staffing agency.

48. For nearly 3 months, Washington performed all the essential duties of her job, and she performed them well. Unfortunately, each time that Washington was up for a promotion, the position was given to a younger employee.

49. Finally, on February 8, 2021, after Washington performed exceptionally well for a sustained period, Washington was hired on a full-time basis by TruFood. Thereafter, Washington continued to excel at work.

50. Within a few months, TruFood told Washington that they wanted to promote her and have her run her own line.

51. Unfortunately, in the fall of 2021, Washington suffered a series of workplace-related injuries with devastating, long-term effects to her health. In short, Washington became disabled as the workplace-related injuries she suffered resulted in physical impairments that substantially limited one or more of her major life activities.

52. Despite these difficulties, Washington continued to perform all the essential functions of her job.

53. In March 2022, Washington's employment with TruFood was terminated. The stated reason for Washington's firing was having a "poor attitude."

54. Prior to her firing, Washington had never been issued a warning, writeup, or been accused of any disciplinary issues.

55. By firing Washington, TruFood failed to follow its own written policies and practices concerning the progressive discipline of its employees.

56. It is believed that TruFood acted willfully and in reckless disregard of Washington's rights under the ADA and the PHRA when it fired her because they failed to engage in the interactive process and/or believed that due to her disabilities, she was or would be unable to perform the essential functions of her job.

57. It is believed that TruFood acted willfully and in reckless disregard of Washington's rights under the ADEA and the PHRA when it fired her because it believed that she was too old to perform the essential functions of her job.

F.   **Exhaustion of Administrative Remedies**

58.   Plaintiffs have dual-filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

59.   Plaintiffs are initiating this action within 90 days of receiving their Right to Sue letters from the EEOC.

60.   In accordance with 43 P.S. § 962(c)(2) of the Pennsylvania Human Relations Act, Plaintiffs are contemporaneously serving a copy of this Complaint on the PHRC.

61.   Accordingly, Plaintiffs have exhausted their administrative remedies under federal and Pennsylvania law.

## STATEMENT OF CLAIMS

### COUNT I
Violations of the ADA
Disparate Treatment, Failure to Accommodate, Retaliation
(Plaintiffs v. TruFood)

62.   Plaintiffs incorporate by reference the allegations in the paragraphs above as if fully set forth herein.

63.   Plaintiffs are disabled individuals as defined by the ADA.

64.   TruFood was aware of Plaintiffs' disabilities and still fired Plaintiffs because of their physical or mental impairments; their perceived physical or mental impairments; and/or due to their record of impairments.

65.   The acts and omissions by TruFood that are described in this Complaint constitute unlawful discrimination, failure to accommodate, and retaliation under the ADA.

66. As a proximate result of TruFood's conduct, Plaintiffs have or will suffer substantial harm, for which Plaintiffs seek general, compensatory, consequential, and punitive damages.

## COUNT II
Violations of the ADA
Disparate Impact
(Plaintiffs v. TruFood)

67. Plaintiffs incorporate by reference the allegations in the paragraphs above as if fully set forth herein.

68. TruFood has facially neutral policies (collectively referred to as "Screening Policies") which concern the company's

   a. Hiring, firing, and promotion of its employees;

   b. Providing or denying a request for an accommodation;

   c. Providing or denying a request for FMLA leave;

   d. Prohibition against retaliation in the workplace.

69. During the 2020-2022 period, TruFood applied its Screening Policies as part of the company's attempt to reduce costs and make itself an attractive acquisition target. As a result, the application of such Screening Policies had a disparate impact on its Protected Class Employees with disabilities.

70. The acts and omissions by TruFood that are described in this Complaint constitute violations of the ADA.

71. As a proximate result of TruFood's conduct, Plaintiffs have or will suffer substantial harm, for which Plaintiffs seek general, compensatory, consequential, and punitive damages.

## COUNT III
Violations of the PHRA
Disparate Treatment, Failure to Accommodate, Retaliation
(Plaintiffs v. TruFood)

72. Plaintiffs incorporate by reference the allegations in the paragraphs above as if fully set forth herein.

73. Plaintiffs are disabled individuals as defined by the PHRA.

74. TruFood was aware of Plaintiffs' disabilities and still fired Plaintiffs because of their physical or mental impairments; their perceived physical or mental impairments; and/or due to their record of impairments.

75. The acts and omissions by TruFood that are described in this Complaint constitute unlawful discrimination, failure to accommodate, and retaliation under the PHRA.

76. As a proximate result of TruFood's conduct, Plaintiffs have or will suffer substantial harm, for which Plaintiffs seek general, compensatory, and consequential damages.

## COUNT IV
Violations of the ADEA
Disparate Treatment
(Plaintiffs v. TruFood)

77. Plaintiffs incorporate by reference the allegations in the paragraphs above as if fully set forth herein.

78. Plaintiffs are all over the age of 40 years.

79. The acts and omissions by TruFood that are described in this Complaint constitute unlawful discrimination under the ADEA.

80. As a proximate result of TruFood's conduct, Plaintiffs have or will suffer substantial harm, for which Plaintiffs seek general, compensatory, consequential, and liquidated damages.

### COUNT V
### Violations of the ADEA
### Disparate Impact
### (Plaintiffs v. TruFood)

81. Plaintiffs incorporate by reference the allegations in the paragraphs above as if fully set forth herein.

82. During the 2020-2022 period, TruFood applied its Screening Policies as part of the company's attempt to reduce costs and make itself an attractive acquisition target. As a result, the application of such Screening Policies had a disparate impact on its Protected Class Employees who were 40 years of age and older.

83. The acts and omissions by TruFood that are described in this Complaint constitute violations of the ADEA.

84. As a proximate result of TruFood's conduct, Plaintiffs have or will suffer substantial harm, for which Plaintiffs seek general, compensatory, consequential, and liquidated damages.

### COUNT VI
### Violations of the PHRA
### Disparate Treatment
### (Plaintiffs v. TruFood)

85. Plaintiffs incorporate by reference the allegations in the paragraphs above as if fully set forth herein.

86. Plaintiffs are all over the age of 40 years.

87. The acts and omissions by TruFood that are described in this Complaint constitute unlawful discrimination under the PHRA.

88. As a proximate result of TruFood's conduct, Plaintiffs have or will suffer substantial harm, for which Plaintiffs seek general, compensatory, and consequential damages.

**COUNT VII**
Violations of the FMLA
Interference
(Crain v. TruFood)

89. Plaintiff Crain incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

90. Crain's disabilities were exacerbated during his employment with TruFood.

91. In February 2022, Crain notified TruFood that he needed to undergo knee replacement surgery and he was requesting FMLA leave.

92. TruFood then intentionally withheld FMLA paperwork from Crain, to prevent him from further invoking his rights under the FMLA.

93. Shortly thereafter, TruFood terminated Crain's employment.

94. The acts and omissions by TruFood that are describe in this Complaint constitute interference under the FMLA.

95. As a proximate result of TruFood's conduct, Crain has or will suffer substantial harm, for which Crain seeks general, compensatory, consequential, and liquidated damages.

## **REQUESTS FOR RELIEF**

Accordingly, Plaintiffs request that this Court enter judgment on behalf of Plaintiffs and enter an order directing the award of other relief, as follows:

A. Finding that TruFood violated the ADA;

B. Finding that TruFood violated the ADEA;

C. Finding that TruFood violated the FMLA;

D. Finding that TruFood violated the PHRA;

E. Awarding Plaintiffs back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make her whole;

F. Awarding Plaintiffs compensatory damages for pain, humiliation, emotional distress, and/or damage to reputation;

G. Awarding Plaintiffs punitive damages under the ADA;

H. Awarding Plaintiffs liquidated damages under the ADEA and FMLA;

I. Awarding Plaintiffs attorneys' fees and costs;

J. Awarding Plaintiffs pre- and post-judgment interest as provided by law; and

K. Awarding Plaintiffs any other relief to which they are entitled and/or which this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

                                      Respectfully submitted,

                                      /s/ Sammy Y. Sugiura
                                      Sammy Y. Sugiura
                                      PA I.D. No. 209942
                                      sammys@jpward.com
                                      J.P. WARD & ASSOCIATES, LLC
                                      201 SOUTH HIGHLAND AVE
                                      SUITE 201
                                      PITTSBURGH, PA 15206
                                      TELEPHONE: (412) 545-3016
                                      FACSIMILE: (412) 540-3399

                                      **COUNSEL FOR PLAINTIFF**